**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MOLLIE LURENNE VICKERY,

                Plaintiff,

                                                               Case No. 3:15-cv-899-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Mollie Lurenne Vickery ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of arthritis, severe depression, degenerative disc disease, bone spurs, chronic obstructive pulmonary disease ("COPD"), carpel tunnel syndrome, hypothyroidism, anxiety, ruptured disc, and muscle spasms. See Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed August 20, 2015, at 189. Plaintiff filed her application on September 25, 2012, alleging an onset date of March 6, 2012. Tr. at 171-72. Plaintiff's application was denied initially, Tr. at 101-02, and was denied upon reconsideration, Tr. at 109-10.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed August 20, 2015; Reference Order (Doc. No. 16), entered August 24, 2015.

At a hearing on February 3, 2015, an Administrative Law Judge ("ALJ") heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by counsel. Tr. at 39-72. On March 5, 2015, the ALJ issued a Decision finding Plaintiff not disabled "from March 6, 2012, through the date of th[e D]ecision," and denying Plaintiff's claim. Tr. at 31; see Tr. at 21-32. Plaintiff then requested review by the Appeals Council, Tr. at 16, and submitted to the Council additional evidence in the form of a brief by her attorney, Tr. at 4, 5; see Tr. at 278-81 (brief and cover letter). On June 4, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. On July 21, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes two arguments on appeal: (1) that, "[d]espite assigning great weight to Dr. [Janet] Humphreys' opinion, the [ALJ] failed to explain why she was not crediting her opinion that '[Plaintiff's] ability to perform simple repetitive tasks may be affected by her mood disorder and anxiety'"; and (2) that the ALJ's "finding that [Plaintiff] was not disabled because she could perform a significant number of jobs at Step Five of the sequential analysis is not supported by substantial evidence." Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed October 20, 2015, at 1; see id. at 9-18. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") on December 9, 2015. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry.  See Tr. at 23-32.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 6, 2012, the alleged onset date."  Tr. at 23 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease, affective disorder, anxiety disorder, and somatoform disorder."  Tr. at 23 (emphasis and citation omitted).  At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 23 (emphasis and citation omitted).

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work . . . with the following exceptions: she is able to change positions between sitting and standing at will; she can never climb ladders, ropes and scaffolds; she can perform occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; she should avoid concentrated exposure to extreme cold and heat, humidity, vibrations, and hazards (moving machinery and heights[)]; she is to perform no activities, which require prolonged neck flexion or extension or repetitive neck motion; she is to avoid repetitive bending, twisting, stooping or squatting; she is only able to carry out simple instructions; she can accept instructions and respond appropriately to criticism from supervisors, and she is able to [g]et along with co-workers without distracting them; however, she needs to avoid fast-paced work, quotas and deadlines[,] and she needs for changes to be introduced gradually; she should avoid contact with others except for occasional brief superficial interaction with general public, co-workers, and supervisors.

Tr. at 25 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a correction officer, inspector, or as a "Subassembly, Assembler." Tr. at 30 (citations omitted). At step five, the ALJ considered Plaintiff's age (forty-nine (49) years old on the alleged onset date), education ("at least a high school education"), work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 30 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified an "Office Helper" as a representative job. Tr. at 31. The ALJ concluded that Plaintiff "has not been not under a disability . . . from March 6, 2012, through the date of th[e D]ecision." Tr. at 31 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of

fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff's two arguments are addressed in turn below.

### A. The ALJ's Assessment of Examining Psychologist Dr. Humphreys's Opinion

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded to each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area

of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

An ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)); see also Colon v. Comm'r of Soc. Sec., No. 6:14-cv-378-Orl-DNF, 2015 WL 5599896, at *4 (M.D. Fla. Sept. 22, 2015) (unpublished) (interpreting Winschel's weight-articulation requirement to apply to non-treating opinions); Cranford v. Comm'r of Soc. Sec., No. 6:13-cv-415-Orl-GJK, 2014 WL 1017972, at *4 (M.D.

Fla. Mar. 17, 2014) (unpublished) (stating that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability").

Here, Dr. Humphreys performed a consultative psychological examination of Plaintiff on February 19, 2013. See Tr. at 537-39. The ALJ gave "great weight" to Dr. Humphreys's opinion, and he summarized and assessed it in part as follows:

> Dr. Humphreys diagnosed mood disorder, anxiety disorder, and pain disorder associated with both psychological factors and general medical condition. As far as [Plaintiff's] ability to perform work related activities, Dr. Humphreys opined that [Plaintiff's] concentration and recent memory appeared impaired, and may impact her ability to carry out complex instructions. Her immediate and remote memory appeared grossly intact. Her social skills and judgment as well as <u>her ability to perform simple and repetitive tasks may be affected by her mood disorder and anxiety</u>; however, she was capable of managing her own funds. Dr. Humphreys recommended that [Plaintiff] may benefit from a pharmacological evaluation and psychotherapy. Dr. Humphreys' opinion is given great weight, and limitations have been placed in the [RFC], and the undersigned agrees with the recommendation that [Plaintiff] may benefit from medication and psychotherapy.

Tr. at 28 (emphasis added) (citing Ex. 15F, located on pages 537-41 of the administrative transcript). In the RFC finding, as noted, the ALJ found Plaintiff "is only able to carry out simple instructions," without specifying any direct limitations in her ability to do so. Tr. at 25.

Plaintiff argues the ALJ erred because he assigned "great weight" to Dr. Humphreys's opinion but failed to credit—and to explain why he was not crediting—Dr. Humphreys's opinion that Plaintiff's "ability to perform simple repetitive tasks may be affected by her mood disorder and anxiety." Pl.'s Br. at 1, 9 (emphasis omitted) (quoting Tr. at 539). Plaintiff contends that this omission was "not harmless because in the end, the ALJ was only able to identify one light work, unskilled occupation" that Plaintiff could perform, and that one

-7-

occupation "was only available in 3,703 positions nationally." Id. at 12; see Tr. at 31.  Plaintiff suggests, essentially, that these few positions might have been reduced even further if the ALJ had included a limitation in Plaintiff's ability to perform simple, repetitive tasks.  Pl.'s Br. at 12-13.

Upon review, the undersigned finds the Decision is due to be reversed and remanded on this issue.  Although one could infer from the Decision various possible reasons why the ALJ did not find Plaintiff limited in her ability to perform simple tasks, this Court's review is frustrated by the ALJ's failure to state the reasons for not incorporating such a limitation, despite giving great weight to Dr. Humphreys's opinion.  And as Plaintiff suggests, the ALJ's failure to do so is particularly troubling in light of the ALJ's finding, discussed further below, regarding whether Plaintiff is able, with her limitations, to perform a significant number of jobs in the national economy.

## B. The ALJ's Step-Five Finding

Plaintiff argues the ALJ erred in his step-five finding that an office helper was a representative occupation and in finding that 3,703 positions nationally is a significant number of positions.  See Pl.'s Br. at 15-18.

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239 (11th Cir. 2004).   In this determination, "the 'appropriate focus under the regulation is the national economy,' not the local economy in which the claimant lives." Atha v. Comm'r, Soc. Sec. Admin., 616 F. App'x 931, 934 (11th Cir. 2015) (quoting Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987)).  There is no bright line rule as

to what constitutes a "significant number" of positions in this context, and the United States Court of Appeals for the Eleventh Circuit recently acknowledged that it "has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." Atha, 616 F. App'x at 934.

To make this step-five finding, "the ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). The VE's testimony may constitute substantial evidence. See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

Here, the ALJ relied on the VE's testimony to conclude that Plaintiff is not disabled because she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. at 31. According to the ALJ, the VE testified that a person with Plaintiff's limitations and other factors "would be able to perform the requirements of representative occupations such as . . . [an] Office Helper," of which the ALJ noted there are 3,703 positions available in the national economy. Tr. at 31. No other occupations were named.

In this finding, the ALJ was relying on the VE's response to the third hypothetical[3] presented at the hearing, which combined the limitations in the first two hypotheticals and added further limitations. See Tr. at 70-71. Specifically, after indicating the hypothetical limitations for the VE to consider, the ALJ asked the VE, "Are you thinking no jobs?" Tr. at 71. The VE replied, "I can find one." Tr. at 71. The VE explained this one job as follows: "At

---

[3] An ALJ poses a hypothetical question to a VE as part of his step-five determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted).

the light level, which would be office helper.  DOT number 239.567-010.  It is light, SVP 2, unskilled.  In the national economy, 3,703 positions exist."  Tr. at 71.  The VE gave no indication whether any of these positions exists regionally.

As noted, Plaintiff argues the ALJ erred here in two respects.  See Pl.'s Br. at 15-18.  First, Plaintiff asserts "the ALJ made a critical error of fact" by indicating the job was "representative."  Id. at 15.  According to Plaintiff, "[t]he ALJ failed to realize that the VE testified that she could only find ONE occupation after adding all the limitations into the hypothetical question."  Id.  Second, Plaintiff contends that the ALJ erred in finding this one job exists in significant numbers when the VE testified that there are only 3,703 positions nationally.  Id. at 16-18.  Plaintiff states that this finding "is simply not reasonable and not supported by substantial evidence."  Id. at 16.

Upon review, the undersigned finds the case also is due to be reversed and remanded on this issue.  Because the VE gave no indication that an office helper was a representative job or that there are other available jobs Plaintiff may be capable of performing, see Tr. at 71, the ALJ mischaracterized the VE's testimony by stating it was a "representative occupation[]," Tr. at 31.  This error, in turn, leaves unclear whether the ALJ actually found that a mere 3,703 positions nationally constituted a "significant" number—or if, instead, the ALJ erroneously assumed these were "representative" of many other available positions in other jobs.

Moreover, this number of positions is indeed surprisingly low to be considered significant.  The undersigned's research has not uncovered a single case affirming nearly such a low number of jobs nationally as a significant number.  Instead, the numbers affirmed

as significant tend to be substantially higher than the 3,703 positions at issue here.[4]  See, e.g., Atha, 616 F. App'x at 935 (23,800 jobs nationally); Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs nationally); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (80,000 jobs nationally); Rodriguez v. Astrue, 2013 WL 3753411, at *2-3 (S.D.N.Y. July 17, 2013) (unpublished) (12,000 jobs nationally).

Because the undersigned cannot determine whether substantial evidence supports the ALJ's conclusion on this point, the undersigned finds that further administrative proceedings are required.

## V.  Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) Reevaluate Dr. Humphreys's opinion, stating with particularity the weight given to it and the reasons therefor; if discounting any portion of it, clearly articulate reasons showing good cause for doing so;
>
> (B) Pose a hypothetical to the vocational expert that includes all assigned limitations;

---

[4] Defendant cites Brooks v. Barnhart, 133 F. App'x 669, 671 (11th Cir. 2005) (unpublished), to show that the number of jobs at issue here is significant. See Def.'s Mem. at 10. Brooks is readily distinguishable from the instant case, however, because the 840 jobs found to be significant in Brooks were all jobs available in the claimant's region—specifically, the north central Alabama region. Brooks, 133 F. App'x at 670. Here, as noted, there is no indication whether any of the 3,703 positions available nationally are located in Plaintiff's region.

   (C) If appropriate, reconsider and clearly articulate whether any jobs Plaintiff is found capable of performing are "representative" jobs and whether they exist in "significant" numbers in the national economy; and

   (D) Take such other action as may be necessary to resolve this claim properly.

 2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 8, 2016.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record